IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

BRANDON SANDERS,

                 Plaintiff,

v.                                           CIVIL ACTION NO. 3:15-14196

C.O. JONES, individually and in his official capacity;
C.O. HARSHBARGER, individually and in his official capacity;
C.O. JOHN DOES 1-X, individually and in their official capacity;
THE WEST VIRGINIA REGIONAL JAIL AND CORRECTIONAL
FACILITY AUTHORITY, an agency of the State of West Virginia;
and JOHN DOE, unknown person or persons,

                 Defendants.

**MEMORANDUM OPINION AND ORDER**

On September 14, 2015, Plaintiff Brandon Sanders filed this action in the Circuit Court of Cabell County, West Virginia, against Defendants The West Virginia Regional Jail and Correctional Facility Authority (WVRJCFA), Correctional Officer Jones, Correctional Officer Harshbarger, Correctional Officers Does 1-X, and John Doe. Thereafter, Defendants removed this case to federal court, and Defendant WVRJCFA filed a Motion to Dismiss. ECF No. 3. For the following reasons, the Court **GRANTS** the motion.

**I.**
**ALLEGATIONS**

In his Complaint, Plaintiff alleges that he was physically assaulted while incarcerated at the Western Regional Jail (WRJ) in October of 2013. Specifically, he claims that correctional officers took him to a recreation yard and struck him in his face, stomach, and other

areas, and slammed his head against the ground causing him to lose consciousness. He states that he was then told that if he reported the incident he would be beaten much worse.

Plaintiff contends that the WVRJCFA is charged with operating the WRJ and with hiring, training, and supervising employees at the facility. It also has a responsibility to keep the WRJ reasonably safe for those incarcerated. Despite these obligations, Plaintiff alleges that Defendant WVRJCFA has been negligent in its duty to hire, train, supervise, and retain the Defendant Correctional Officers, and it has been grossly negligent and reckless in allowing Plaintiff to be placed under the control of such individuals at the WRJ. Plaintiff further asserts Defendant WVRJCFA has been deliberately indifferent and has tacitly approved of a pattern and practice of abuse at the WRJ. Additionally, Plaintiff asserts that the WVRJCFA has engaged in a conspiracy with others to conceal the misconduct.

Generally, Plaintiff alleges that these activities deprived him of his constitutional rights under, but not limited to, the Fourth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, and under West Virginia's Constitution, statutes, and common law. Specifically, Plaintiff sets forth seven counts, which include: (1) Count One—Plaintiff was denied his constitutional rights by the individual Defendants and John Does I-X; (2) Count Two—The actions of all Defendants caused Plaintiff to suffer severe emotional distress; (3) Count Three—Defendant WVRJCFA, and others, were negligent in the staffing, training, supervision, and retention of staff and negligent in failing to protect Plaintiff from foreseeable harm; (4) Count Four—The individual Defendants committed certain identified state statutory and common law claims and common law negligence against the WVRJCFA and John

Does I-X; (5) Count Five—All Defendants are liable to Plaintiff for damages; (6) Count Six—All Defendants have engaged in a civil conspiracy to deny Plaintiff of his federal and state constitutional rights, his rights under state statutes and common law, and his rights under Defendant WVRJCFA's own rules, policies, and provisions; and (7) Count Seven-Defendant WVRJCFA and others are liable for negligent retention, negligent hiring, negligent failure to intervene, negligent supervision, negligent failure to train, respondeat superior, outrage, negligent infliction of emotional distress, invasion of privacy, harassment, and violations of the Fourth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution. There also appears to be claims in Count Seven that the individual Defendants and Defendants John Does I-X violated certain provisions of West Virginia's Constitution.

## II.
## DISCUSSION

In its motion, Defendant WVRJCFA seeks dismissal of all the alleged federal and state constitutional violations in Count Seven, all other tort claims based upon a theory of respondeat superior or vicarious liability, and all claims of negligent retention, supervision, and training in Count Three. Initially, in his Response, "Plaintiff concedes that he cannot pursue and seek monetary damages from Defendant [WVRJCFA] regarding constitutional violations," and that dismissal of his constitutional claims against the WVRJCFA is proper. *Pl.'s Resp. to Def. WVRJCFA's Mot. to Dismiss*, at 13. Upon review, the Court agrees that these claims must be dismissed. *See Porter v. W. Va. Reg'l Jail & Corr. Facility Auth.,* Civ. Act. No. 3:14-26583, 2015 WL 5698514, at *2 (S.D. W. Va. Sept. 28, 2015) (stating the WVRJCFA is protected by Eleventh Amendment immunity); *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.,* 728 F. Supp.2d 803, 818 (S.D. W. Va. 2010) (finding that the WVRJCFA is not a "person" for purposes of a claim for money damages under § 1983); *see also McMillion-Tolliver v. Kowalski,* Civ. Act. No. 2:13-CV-

29533, 2014 WL 1329790, at *2 (S.D. W. Va. Apr. 1, 2014) ("Without an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's claim [against the WVRJCFA] must fail."). Therefore, the Court **GRANTS** Defendant WVRJCFA's motion to dismiss all the federal and state constitutional claims made against it.

Next, the Court turns to Defendant WVRJCFA's argument that all claims of negligent retention, supervision, and training, and all other tort claims must be dismissed. Relying upon the West Virginia Supreme Court of Appeals' decision in *West Virginia Regional Jail and Correctional Authority v. A.B.*, 766 S.E.2d 751 (W. Va. 2014), Defendant WVRJCFA asserts it cannot be held vicariously liable for the actions of Defendants Jones and Harshbarger because the alleged conduct clearly fell outside the scope of their employment as a matter of law. Upon review, the Court agrees.

In *A.B.*, the West Virginia Supreme Court was asked to determine whether the WVRJCFA could be held vicariously liable for a correctional officer who allegedly sexually assaulted an inmate and whether the WVRJCFA could be held liable for the plaintiff's claims of negligent supervision, training, and retention. 766 S.E.2d at 757. In addressing the vicarious liability argument first, the court held that where an "employee's conduct which *properly* gives rise to a cause of action is found to be within the scope of his authority or employment, . . . the State is [not] entitled to immunity and the State may therefore be liable under the principles of *respondeat superior*." *Id*. at 765 (italics original). Thus, there is no immunity when "State actors violate clearly established rights while acting within the scope of their authority and/or employment[.]" *Id*. Conversely, when an employee's actions are determined to be "outside of the

scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability." *Id*. at 767.

Applying these principles to correctional officers, the court recognized that their general functions "are *broadly* characterized as discretionary, requiring the use of his discretionary judgments and decisions." *Id*. at 768 (italics original). With respect to acts or omissions arising from discretionary functions, the court held that the first determination must be "whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992)." *Id*. at Syl. Pt. 11, in part.[1] If the plaintiff has not made such a showing, "both the State and its officials or employees charged with such acts or omissions are immune from liability." *Id*. However, if the plaintiff demonstrates a violation "or can otherwise identify fraudulent, malicious, or oppressive acts committed by such official or employee," it then must be decided

---

[1]The Syllabus Point in *Chase* provides:

> A public executive official who is acting within the scope of his authority and is **592 *357 not covered by the provisions of W.Va.Code, 29–12A–1, *et seq.,* is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known. There is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive. To the extent that *State ex rel. Boone National Bank of Madison v. Manns,* 126 W.Va. 643, 29 S.E.2d 621 (1944), is contrary, it is overruled.

*Chase*, 424 S.E.2d at 591-92.

> whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment. To the extent that such official or employee is determined to have been acting outside of the scope of his duties, authority, and/or employment, the State and/or its agencies are immune from vicarious liability, but the public employee or official is not entitled to immunity in accordance with *State v. Chase Securities, Inc.*, 188 W. Va. 356, 424 S.E.2d 591 (1992) and its progeny. If the public official or employee was acting within the scope of his duties, authority, and/or employment, the State and/or its agencies may be held liable for such acts or omissions under the doctrine of *respondeat superior* along with the public official or employee.

*Id.* at Syl. Pt. 12, in part.

In *A.B.*, it was undisputed that sexually assaulting an inmate violated clearly established law. *Id.* at 768. Thus, the court stated its inquiry was limited to determining whether the correctional officer was acting within his general scope of authority and employment. *Id*. Generally, such a determination is a question of fact to be resolved by a jury. However, a court is not precluded from making such a decision as a matter of law where the facts are not disputed and a factfinder could not reasonably determine that an act was committed within the scope of employment. *Id*. (citations omitted). In deciding whether undisputed facts fall within the scope of employment, a court should look to the purpose of the act. If the act was directed, either specifically or impliedly by the employer, or was "'an *ordinary and natural incident or result of that act*, [it] is within the scope of the employment.'" *Id*. (quoting Syl. Pt. 6, *Courtless v. Jolliffe*, 507 S.E.2d 136 (1998) (other citations omitted)). Citing the Restatement (Second) of Agency § 228 (1958), the court further recognized that an employee's conduct is within the scope of employment if it is "1) *of the kind he is employed to perform*; 2) occurs within the authorized time and space limits; 3) it is actuated, at least in part, by a *purpose to serve the master,* and; 4) if force is used, the *use of force is not unexpectable by the master*." *Id*. at 769 (italics original; footnote omitted). However,

conduct does not fall "within the scope of employment if it is *different in kind from that authorized,* far beyond the authorized time or space limits, or *too little actuated by a purpose to serve the master.*" *Id.* (emphasis added in *A.B.*; internal quotation marks omitted).

Finding no disputed facts in the case before it, the West Virginia Supreme Court found that the alleged sexual assaults were "in no way an 'ordinary and natural incident' of the duties with which he was charged by the WVRJCFA and in no way furthered the purpose of the WVRJCFA." *Id.* at 772. The Court held it was not sufficient that the correctional officer's position gave him a unique opportunity to commit sexual assaults because "the mere proximity and opportunity that his job provided to commit such acts do not, alone, bring them within the scope of his employment." *Id.* at 769. Moreover, the sexual assault of an inmate is "so divergent from the scope of his duties they were made expressly felonious if committed by [a correctional officer] in that context." *Id.*; *see* W. Va. Code § 61-8B-10(a) ("Imposition of sexual acts on persons incarcerated or under supervision; penalties"). Therefore, the court held that the WVRJCFA was entitled to immunity on the vicarious liability claims. *Id.* at 772.

Applying these same considerations to the present case, the Court reaches a similar result. The allegations here are that, because Plaintiff had requested to visit a medical unit on a number of occasions, Defendant Jones and Harshbarger removed him "from his pod, escorted him to the recreation yard and began striking Plaintiff in the face, stomach and other parts of his body as well as slamming Plaintiff's head against the ground causing Plaintiff to lose consciousness." *Compl.* at ¶2. In addition, Plaintiff alleges that "one of the individual Defendants informed Plaintiff that if he reported the abuses, the next beating was going to be ten (10) times worse. Before, during

and after the assaults, Plaintiff was threatened by the individual Defendants." *Id*. Furthermore, Plaintiff asserts that other "Defendant(s) John Doe(s) I-X conspired with, aided and abetted, acted as a lookout, served as an accessory before and after the fact and acted as a principal with regard to misconduct of the individual Defendants." *Id*. at ¶6.

Assuming the truth of Plaintiff's allegations, they plainly demonstrate activities that a reasonably prudent person would know violate clearly established laws and constitutional rights, and are malicious and oppressive. Additionally, merely because the correctional officers' positions gave them the opportunity to commit such alleged atrocious acts, it does not mean such acts were committed within the scope of their employment. Certainly, they were not. The Court finds that no reasonable factfinder could conclude that the unjustified, purposefully, and malicious attack described by Plaintiff in his Complaint could even remotely serve the purpose of the WVRJCFA.[2] Accordingly, the Court finds these acts were not committed within the scope of the correctional

---

[2]In order to make a showing that the correctional officers were acting within the scope of their authority, Plaintiff points to the Oath of Office a prospective employee must take before becoming a correctional officer. This Oath requires employees to follow constitutional and statutory mandates and comply with the policies, procedures, rules, and regulations of the WVRJCFA. In addition, Section 3027 of the WVRJCFA's Policies and Procedures, entitled "Job Descriptions" lists the duties and tasks correctional offices such as Defendants Jones and Harshbarger must follow. Similarly, Section 3027 lists the "Essential Functions and Tasks" of a correctional officer. Although a correctional officer is permitted to use physical force within the scope of employment to maintain control of unruly inmates, maintain security, and protect oneself and others, the allegations in this case do not fall within those parameters. Likewise, the alleged activities fall far outside of a correctional officer's duty to escort prisoners around a facility. Here, Plaintiff has alleged a vicious and unprovoked attack which exceeds the bounds of the WVRJCFA's Policies and Procedures. Therefore, the Court rejects Plaintiff's argument that these Policies and Procedures bring the alleged actions of Defendants Jones and Harshbarger within the scope of their employment.

officers' employment, and the WVRJCFA is entitled to immunity on Plaintiff's theory of respondeat superior and vicarious liability.

Turning next to Plaintiff's negligent training, supervision and retention claims, the Court likewise finds these claims must be dismissed. In *A.B.*, the court noted that, in the absence of a "named 'bad actor,'" claims of negligent training, supervision, and retention also are based upon a theory of vicarious liability. *Id*. at 772. Such claims are "derive[d] from the alleged negligence of some public officer(s) or employee(s) responsible for the training, supervision, and retention of [the correctional officers]." *Id*. The court concluded that these broad categories of duties "easily fall within the category of 'discretionary' governmental functions." *Id*. at 773 (citations omitted). Nevertheless, immunity is not automatic merely because they are discretionary functions. If a plaintiff "can nonetheless demonstrate that the WVRJCFA violated a 'clearly established' right or law with respect to its training, supervision, or retention of [a correctional officer], the WVRJCFA is not entitled to immunity." *Id*. at 774 (footnote omitted). Here, Plaintiff has not identified any "bad actor" or any such right or law with respect to training, supervision, or retention. Accordingly, these claims must be dismissed as against the WVRJCFA.[3] *See R.Q. v. W. Va. Div. of Corrs.*, No. 13-1223, 2015 WL 1741635, *5 (W. Va. Apr. 10, 2015) (unpublished) (finding the petitioner did not establish a violation of a clearly established right where she "did not identify a single policy, procedure, rule, regulation, or statute that the DOC violated").

---

[3]The WVRJCFA also has a cursory statement that the negligent retention and supervision claims should be dismissed against the John Doe Defendants. Plaintiff alleges that these individuals include those "correctional employees who negligently hired, negligently retained, negligently failed to train, negligently failed to properly supervise the individual Defendants . . . . *Compl.* at ¶6. The Court declines to dismiss the John Doe Defendants before Plaintiff has the opportunity to conduct discovery on these individuals.

-9-

**III.**
**CONCLUSION**

Accordingly, for the foregoing reasons, the Court **GRANTS** the Defendant WVRJCFA's Motion to Dismiss. ECF No. 3.


The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        June 22, 2016

ROBERT C. CHAMBERS, CHIEF JUDGE

-10-